**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-03726-NYW

BRENDA MEDINA,

      Plaintiff,

v.

SAFEWAY INC., a foreign corporation,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant Safeway Inc.'s ("Safeway" or "Defendant") Motion for Summary Judgment and Brief ("Motion for Summary Judgment" or "Motion") [Doc. 34, filed October 8, 2021].  The court considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated February 8, 2021 [Doc. 13].  *See also* [Doc. 12].  For the reasons explained herein, the Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

**I.      Factual Background**

      The court draws the following allegations from the Complaint to provide a brief overview of the case, as the material undisputed facts are discussed in detail below.  *See* [Doc. 4].  Plaintiff Brenda Medina ("Ms. Medina" or "Plaintiff") has been an employee of Safeway for 24 years and, since 2014, has been employed in the position of "checker" at the Safeway store located in Fort Collins, Colorado—store #1552.  [*Id*. at ¶¶ 6–7].  Ms. Medina a member of the Jehovah's Witness faith; as part of her religious practice, she does not celebrate holidays.  [*Id.* at ¶ 8].

In the fall of 2018, Safeway began a campaign whereby it would solicit donations from customers at the check stands for "Turkey Bucks" and "Santa Bucks" as part of the holiday season. [*Id.* at ¶ 10].  Ms. Medina alleges that she approached her supervisor and requested to be exempted from asking customers to donate to the campaign, citing to her religious beliefs.  [*Id*. at ¶ 11].  Ms. Medina claims that her supervisor denied this request and began to harass her "by hovering at her check stand to see if she would ask customers to donate."  [*Id.* at ¶ 13].  Thereafter, Ms. Medina reported the issues regarding her accommodation request and "harassment from her supervisor" to her union representative.  [*Id.* at ¶ 14].  Ms. Medina claims her union representative and Safeway responded by deciding, "without any interactive process," that Safeway would allow Ms. Medina to take unpaid leave until after the holidays, upon which time "she would be permitted to return to work after the 'Santa Bucks' campaign ended."  [*Id.* at ¶ 15].  Ms. Medina alleges that when she protested this proposed solution, "her supervisors said they could assign her to the 'self-check' area 'as punishment.'"  [*Id.* at ¶ 16].  Ms. Medina ultimately signed a document accepting the proposal to take unpaid leave, which she claims she "felt pressured to sign[.]"  [*Id.* at ¶ 17].

In the fall of 2019, Ms. Medina was "under the impression" that unpaid leave was the only option available to her to accommodate her request to be exempted from soliciting "Turkey Bucks" and "Santa Bucks" for Safeway's holiday campaign, so she began another unpaid leave on or about October 24, 2019.  [*Id.* at ¶¶ 18–19].  However, on or about November 28, 2019, Ms. Medina sent a text message to her union representative stating that she did not believe unpaid leave constituted a reasonable accommodation of her religious beliefs.  [*Id.* at ¶ 20].  The union representative responded that "it was too late to change it because she had agreed to it the prior year."  [*Id.* at ¶ 21].  Thus, Ms. Medina took 8 weeks of unpaid leave in 2019.

On October 19, 2020, the union representative notified Ms. Medina that Safeway had agreed to allow her to work "self-check only during her usual shift from 3:30 pm-12 am," which would allow Ms. Medina to "not lose any pay over the holidays." [*Id.* at ¶¶ 23–24]. However, when Ms. Medina visited Safeway to sign the agreement reflecting those terms, "[t]he agreement stated she would work self-check, and also dairy and frozen areas, and that her hours would not be guaranteed." [*Id.* at ¶ 25]. Ms. Medina objected to the agreement because it "was not what she agreed to," and Safeway responded that it "could not guarantee her hours and that if she would not sign the agreement, they did not have work for her" and sent Ms. Medina home. [*Id.* at ¶¶ 26–27]. Ms. Medina later reiterated to the union representative that "she would agree to work self-check with her same hours as a reasonable accommodation," and the representative responded "that the store could not guarantee that." [*Id.* at ¶ 28]. After taking unpaid leave again during the 2020 holiday season, [*id.* at ¶ 31], on March 18, 2020, Ms. Medina filed a charge of discrimination against Safeway with the Colorado Civil Rights Division. [*Id.* at ¶ 32].

In her Complaint, Ms. Medina raises two claims: (1) religious discrimination (failure to accommodate) and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; (2) religious discrimination (failure to accommodate) and retaliation in violation of Colorado's Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-401, *et seq.* [*Id.* at ¶¶ 33–39].[1] Ms. Medina seeks the following relief: declaratory and/or injunctive relief; compensatory damages, attorneys' fees; pre-judgment, post-judgment, and moratory interest;

---

[1] While Ms. Medina alleges that she was harassed by her supervisor by "hovering at her check stand to see if she would ask customers to donate," [Doc. 4 at ¶ 13], she does not allege a hostile work environment claim. *See generally* [Doc. 4; Doc. 50]. Instead, she contends that "harassing her about her failure to ask for holiday donations, would, in fact, be **a failure to accommodate** her religious beliefs." [Doc. 39 at 2 (emphasis added)].

liquidated damages and/or statutory penalties; and any other relief as the court deems just and proper.  [*Id.* at 6–7].

## II.    Procedural History of the Instant Motion for Summary Judgment

Ms. Medina initiated this action on December 1, 2020 by filing a Complaint in the District Court, Larimer County, Colorado.  [Doc. 4].  On December 21, 2020, Safeway removed the action to this court, asserting federal question jurisdiction based on Plaintiff's Title VII claim.  [Doc. 1 at ¶¶ 4–5].  Safeway answered the Complaint on December 30, 2020.  [Doc. 8].  Upon the consent of the Parties, this case was referred to the undersigned Magistrate Judge on February 8, 2021. [Doc. 12; Doc. 13].  On March 1, 2021, the court entered a Scheduling Order which set the dispositive motion deadline for September 23, 2021.  [Doc. 20].  After the court granted the Parties' requests for extensions of time, *see* [Doc. 30; Doc. 31; Doc. 32; Doc. 33], Safeway filed the instant Motion for Summary Judgment on October 8, 2021.  [Doc. 34].  Ms. Medina responded to the Motion on November 10, 2021, and Safeway replied on November 24, 2021.  [Doc. 39; Doc. 40]. On January 10, 2022, the court held a final pretrial conference and set this case for a four-day trial to commence on April 11, 2022.  [Doc. 48].  The Motion for Summary Judgment is thus ripe for determination.

## MOTION FOR SUMMARY JUDGMENT

## I.    Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs.,*

*Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy her burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).  In considering the nonmovant's evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, the court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).  Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury."  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

## II.  Undisputed Material Facts

The court draws the following undisputed material facts from the record before it.[2]

---

[2] The court includes only those undisputed facts which are material to the instant Motion.  In some instances, a Party has attempted to dispute the proffered material fact, but an examination of the

1.      Ms. Medina has been an employee of Safeway for over 24 years.  [Doc. 34-1 at 7:13–21; Doc. 39 at 1].[3]

2.      Since 2014, Ms. Medina has been employed at Safeway store No. 1552 in Fort Colins, Colorado.  [Doc. 1 at ¶ 7; Doc. 39 at 1].

3.      Under the Union Contract, Ms. Medina's job is classified as an "all-purpose food clerk," which meant that she could perform her work duties "pretty much anywhere in the store" and that management had the discretion to assign her to work wherever it decided, including self-checkout.  [Doc. 34-1 at 67:13–25].[4]

---

record finds that such dispute is not properly supported by evidence in the record or is otherwise improper.  Where that is the case, the court has noted the purported dispute and its analysis.  But at the outset, the court notes that both Parties failed to comply with this court's Practice Standards in their summary judgment briefing.  The Practice Standards provide that "[a]ll responses must contain a Response to Statement of Material Facts section that must admit or deny each identified fact **with citations to evidence in the record**."  NYW Civ. Practice Standard 56.1 (emphasis added).  In addition, the Practice Standards state that, to the extent that a response contains a Statement of Additional Material Facts, "all replies **must . . . respond to said facts with citations to specific evidence in the record**, but may not include any additional facts not already offered in the motion or response."  *Id.* (emphasis added).  Defendant included a "Statement of Undisputed Material Facts" section, [Doc. 34 at 2], to which Plaintiff responded with a "Response to Undisputed Material Facts" section, [Doc. 39 at 1], which fails to cite evidence in the record with respect to her denials; and Plaintiff's references to her "Disputed Material Facts" section in her Response, [*id.* at 2–4], does not comply with the Practice Standards. *See* NYW Civ. Practice Standard 56.1.  Moreover, Defendant's Reply fails to respond to Plaintiff's "Disputed Material Facts" section at all, let alone with specific citations to record evidence.  *See* [Doc. 40]; *see also Alvariza v. Home Depot*, 506 F. Supp. 2d 451, 459 (D. Colo. 2007) ("Judges are not like pigs, hunting for truffles buried in the record." (formatting altered) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)).  The Parties' failure to comply with the undersigned's Practice Standards has complicated this court's ability to rule efficiently on the Motion for Summary Judgment.

[3] When citing a transcript, the court cites the document number generated by the Electronic Case Filing ("ECF") system but the page and line numbers generated by the transcript.

[4] Safeway does not mention this fact in its Motion, and Plaintiff does not mention it in her Response.  *See* [Doc. 34; Doc. 39].  However, Safeway points to this fact in its Reply and cites to Ms. Medina's deposition transcript, wherein she testified that she agreed that her "job classification under the inion contract was called all-purpose food clerk," and that she could be assigned to perform her work anywhere, including self-checkout.  *See* [Doc. 40 at 2 (citing to [Doc. 34-1 at 67:13–25])].  Accordingly, the court deems this fact undisputed.

4.      In late 2017, Ms. Medina complained to Safeway about religious discrimination. [Doc. 34 at 2; Doc. 34-1 at 39:7–10].

5.      Ms. Medina filed a grievance with her Union, United Food & Commercial Workers ("UFCW") Local #7 on December 7, 2017, wherein she complained about "[h]arassment and bullying by store manager". [Doc. 34-3 at 1]. Ms. Medina requested the following remedy:

> The harassment and bullying shall cease and desist. The Company shall provide Ms. Medina with a non-hostile work environment free from all forms of discrimination and harassment. Also, Ms. Medina shall be made whole for any and all losses caused by this unjust treatment.

[*Id.*].

6.      In the fall of 2018, Safeway began a campaign to solicit donations from customers at the check stands for "Turkey Bucks" and "Santa Bucks" as part of the holiday season. [Doc. 4 at ¶ 10; Doc. 8 at ¶ 10].

7.      At some point around the time of this campaign, Ms. Medina requested an accommodation from requesting such holiday-themed donations.[5]

8.      In 2018, after Ms. Medina made her request, Safeway provided Ms. Medina an option to not say "Turkey" or "Santa Bucks" but, instead, "Would you like to donate to the Larimer County Food Bank?" [Doc. 34-2 at 41:23–42:6]. When Ms. Medina declined that offer, Safeway

---

[5] In the Complaint, Ms. Medina alleges that, after the 2018 campaign began, she "approached her supervisor and asked to be exempted from asking customers to donate, citing to het religious beliefs." [Doc. 4 at ¶ 11]. Safeway denied this allegation in its Answer. *See* [Doc. 8 at ¶ 11]. Further, in the instant Motion, Safeway claims that Ms. Medina, "for the first time in late 2017, [ ] objected to requesting donations from customers during the holidays because of the fact that she did not celebrate holidays as a matter of religious belief" and "Safeway handled this objection pursuant to its reasonable accommodation policies." [Doc. 34 at 2–3]. However, Safeway cites to the Rule 30(b)(6) deposition of Safeway's corporate representative in support of the latter assertion, [*id.* at 3 (citing [Doc. 34-2 at 41:23–42:15], and that deposition testimony establishes that Safeway offered Ms. Medina certain accommodations sometime in 2018. *See* [Doc. 34-2 at 41:23–42:15].

offered her different positions throughout the store that she could do that did not require that she ask for donations at all; however, Ms. Medina declined that offer as well.  [*Id.* at 42:7–15].

9.      On November 13, 2018, Safeway held a meeting with Ms. Medina, Union Representative Jay Martinez ("Mr. Martinez"), Safeway's Denver Employee/Labor Relations point person Angela Montgomery ("Ms. Montgomery"), and Store Manager Garry Rickart ("Mr. Rickart").[6]  [Doc. 39-2 at 37:9–38:4].  During the meeting, Mr. Martinez and Plaintiff stepped away for a few minutes to discuss a "solution" that Mr. Martinez thought would better accommodate Plaintiff and "to ask for her permission as well."  [Doc. 39-2 at 37:9–38:4].

10.     Ms. Medina agreed in writing to a proposal the same day, which provided that "[d]uring the holiday seasons of Thanksgiving and Christmas, Ms. Medina will take a personal leave of absence."  [Doc. 34-3 at 4]; *see also* [Doc. 34-3 at 2; Doc. 39 at 2].

11.     The next holiday season, beginning October 24, 2019, Ms. Medina took another personal leave of absence based on her assumption that the agreement she signed in 2018 constituted a continuous arrangement with Safeway.  *See* [Doc. 34-1 at 51:17–55:13; Doc. 34-3 at 7; Doc. 39 at 2].[7]

12.     However, in December 2019, Plaintiff reached out to Mr. Martinez to request that she be allowed to return to work—in particular, that she "want[ed] [her] job back immediately without asking for donations" plus "back pay for this year's missed wages and last year's as well."

---

[6] Plaintiff's Response identifies Mr. Rickart as the "manager."  *See* [Doc. 34 at 5, 9, 11].  *But see* [Doc. 39-9 at 1 (identifying Garry Rickart as the "Store Director")].  Safeway's Reply brief identifies Ms. Montgomery as "Safeway Denver Employee/Labor Relations."  [Doc. 40 at 3]; *see also* [Doc. 39-9 at 1 (identifying Angela Montgomery as "Denver Employee/Labor Relations").

[7] Ms. Medina's Response appears to contest the fact that she "assumed" she had a continuous agreement to take unpaid leave, *see* [Doc. 39 at 2]; however, Ms. Medina testified that she notified Ms. Hinojosa that she intended to take a leave of absence in 2019 because "[o]n that paperwork [she] signed, [she] assumed it was every year."  [Doc. 34-1 at 53:16–19].

[Doc. 39-1 at 56:8–58:18; Doc. 34-3 at 5; Doc. 39 at 5].[8]

13.    Mr. Martinez responded to Plaintiff's request: "Well unfortunately that's not the way it works according to the agreement that you signed.  The only way you could go back is you would have to ask for donations through the holidays [w]hile in the checkstand or maybe we can get you back sooner if you agree to run the self checkouts during the holiday?"  [Doc. 34-3 at 5; Doc. 34 at 3; Doc. 39 at 5].

14.    In October 2020, Safeway offered Ms. Medina the option to work self-checkout at the store from 3:30 p.m. to midnight, which would allow her to keep her regular work hours without asking for donations.  [Doc. 34-3 at 6; Doc. 39-5 at 1; Doc. 39-2 at 41:1–21; Doc. 39-3 at 52:6–17].  Ms. Medina agreed to this arrangement.  [Doc. 39 at 6].

15.    The agreement that Safeway asked Ms. Medina to sign, however, did not contain language stating that Ms. Medina would be permitted to work the specific 3:30 p.m. to midnight shift; instead, it stated that

> Ms. Medina agrees to be assigned to the Self-Checkout registers **for her entire shift** at the Safeway in Fort Collins, Store #1552 during the holiday seasons of Thanksgiving and Christmas.

[Doc. 39-5 at 1 (emphasis added); Doc. 39 at 6].

16.    Ms. Medina refused to sign the agreement because it did not specify that she would be guaranteed a "3:30 to midnight" shift.  [Doc. 39 at 6; Doc. 39-1 at 67:9–12; Doc. 39-9].

17.    Although Mr. Rickart proposed to accommodate Ms. Medina to remain at self-checkout from 3:30 p.m. to midnight during the holiday season, he also advised Ms. Medina that Safeway "cannot guarantee that the shift will always be 3:30 to midnight and that some days the

---

[8] While Safeway claims that Ms. Medina made this request "[i]n late 2020," [Doc. 34 at 3], the record reflects that this occurred in December 2019.

closing self checkout shift that [Safeway] ha[d] created to accommodate her situation might be 4 pm to midnight or 7 pm to midnight depending on the sales and needs of the store." [Doc. 39-9; Doc. 39 at 6]; *see also* [Doc. 39-3 at 52:6–17 (Mr. Rickart's testimony that the 3:30 to midnight self-checkout arrangement was "just not ideal" as "[s]elf-checkout normally closes at 10 p.m., because at that time of night, we don't have very many customers")].

18.     Thereafter, Safeway placed Ms. Medina on unpaid leave until after the 2019 holiday season. [Doc. 4 at ¶ 31; Doc. 39 at 4].[9]

19.     On November 5, 2020, Mr. Martinez filed two grievances on behalf of Plaintiff, one for "discrimination against Ms. Medina due to her religious beliefs" and the other on the basis that "Ms. Medina received an unjust suspension." [Doc. 39-5 at 4–5; Doc. 39 at 5].

20.     Ms. Medina filed a Charge of Discrimination with the Colorado Civil Rights Division on or about March 18, 2020, and she was issued a Notice of Right to Sue sometime thereafter. [Doc. 4 at ¶ 32; Doc. 8 at ¶ 32].

21.     Ms. Medina filed her Complaint on December 1, 2020. [Doc. 4].

## III.   Analysis

Ms. Medina asserts claims against Safeway for religious discrimination and retaliation in violation of Title VII and CADA. [Doc. 4 at ¶¶ 33–49]. Specifically, she alleges she "was subjected to religious discrimination, was not accommodated, and was placed on unpaid leave

---

[9] In the Motion, Safeway asserts that "[s]ince Ms. Medina had declined various reasonable accommodations, she was placed on an unpaid leave of absence in the fall of 2020 during the same time period that she had previously agreed to in 2018 and 2019." [Doc. 34 at 4]. In her Response, Ms. Medina only denies that she was "offered 'various reasonable accommodations' in 2020" and does not address the remainder of this statement. [Doc. 39 at 4]. Thus, this court deems the statement above as undisputed.

because she complained about religious discrimination." [*Id.* at ¶ 36]. Ms. Medina also maintains these claims in the Final Pretrial Order. *See* [Doc. 50 at 2–3].

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e–2(a)(1). Because Title VII and CADA claims "rise and fall together," the court will examine the state and federal claims together. *Agassounon v. Jeppesen Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) ("CADA discrimination...claims are subject to the same legal standards as Title VII claims.") (citing *Johnson v. Weld County*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010)).

Notably, while in the Motion for Summary Judgment, Safeway seeks "an order dismissing Medina's claims in their entirety," [Doc. 34 at 9], Safeway raises arguments *only* with respect to Ms. Medina's failure to accommodate theory of liability—it fails to raise any arguments at all with respect to Ms. Medina's retaliation claims under either Title VII or CADA. *See* [Doc. 34; Doc. 40]. Indeed, Safeway appears to disregard Plaintiff's retaliation claims altogether when describing her Complaint. *See* [Doc. 34 at 1–2]. There is no indication on the docket that Ms. Medina has somehow abandoned her retaliation claims. Indeed, Safeway acknowledges Plaintiff's retaliation claims in its defense section of the Final Pretrial Order. [Doc. 50 at 3]. Arguments not raised or inadequately developed in an opening brief are waived. *See United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (deeming waived an argument inadequately developed in opening brief); *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1148 n.3 (10th Cir. 2008) (same); *Rojem v. Gibson*, 245 F.3d 1130, 1141 n.8 (10th Cir. 2001) (same). The court now

proceeds to address Defendant's arguments with respect to Plaintiff's failure to accommodate discrimination claim.

### A.  Failure to Accommodate

Safeway advances two primary arguments in support of its Motion for Summary Judgment. *See* [Doc. 34].  First, Safeway argues that it offered reasonable accommodations for Ms. Medina's religious principles.  [*Id.* at 5–8].  Second, Safeway contends that the Union's collective bargaining agreement controls, and therefore it "was not required to offer any accommodation that would or could have affected the seniority system employed by the Union to schedule shifts."  [*Id.* at 8–9].

Title VII imposes an obligation on an employer "to reasonably accommodate the religious practices of an employee . . . unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business."  29 C.F.R. § 1605.2(b)(1) (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977)).  To survive summary judgment on this claim, Ms. Medina bears the burden of production with respect to a prima facie case.  *Thomas v. Nat'l Ass'n of Ltr. Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000).  To present such a case, Ms. Medina must show that (1) she had a bona fide religious belief that conflicted with an employment requirement; (2) she informed Safeway of this belief; and (3) she suffered an adverse employment action for failing to comply with the conflicting employment requirement.  *Id.*  If Ms. Medina states a prima facie case, the burden then shifts to Safeway to "(1) conclusively rebut one or more elements of [Ms. Medina's] prima face case, (2) show that it offered a reasonable accommodation, or (3) show that it was unable reasonably to accommodate [Ms. Medina's] religious needs without undue hardship."  *Id.*

### 1. Plaintiff's Burden

In her Response, Ms. Medina contends that "[f]or the purposes of summary judgment, it is undisputed that [she] had a bona fide religious belief that conflicted with her job, that she requested an accommodation, and that she took unpaid leave each year, resulting in lost wages." [Doc. 39 at 7–8]. Safeway does not challenge Ms. Medina's prima facie case in the Motion or in its Reply. *See* [Doc. 34; Doc. 40]. Accordingly, for the purposes of the instant Motion for Summary Judgment, the court also finds that Plaintiff has established her prima facie case: (1) Ms. Medina alleges she has a bona fide religious practice—that she is a practicing Jehovah's Witness who does not observe traditional holidays—that conflicted with Safeway's requirement that she solicit "Turkey Bucks" and "Santa Bucks" from customers during the holiday season; (2) Ms. Medina informed Safeway about this conflict; and (3) Safeway placed Ms. Medina on unpaid leave during each holiday season so she would not need to solicit "Turkey Bucks" and "Santa Bucks" from customers. *See Haskew v. S.W. Airlines Co.*, CV 19-732 JAP/LF, 2020 WL 6781754, at *4 (D.N.M. Nov. 18, 2020) ("[B]eing placed on unpaid leave is an adverse employment action." (citing to *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998)). *But see Tabura v. Kellogg USA*, 880 F.3d 544, 552 (10th Cir. 2018) (noting that, in *Ansonia Board of Education v. Philbrook*, 479 U.S. 60 (1986), the Supreme Court observed that "[g]enerally speaking, [t]he direct effect of [unpaid leave] is merely a loss of income for the period the employee is not at work; such an exclusion has no direct effect upon either employment opportunities or job status" (quotations and citations omitted)).

### 2. Defendant's Burden

The burden now shifts to Safeway (1) to rebut an element of Plaintiff's prima facie claim; (2) to show that it provided a reasonable accommodation for Plaintiff's religious practice; or (3)

to show that it could not offer a reasonable accommodation without undue hardship. *Thomas*, 225 F.3d at 1156. Here, Safeway first argues that it reasonably accommodated Ms. Medina's religious practices and, second, that Ms. Medina's requested accommodation would have resulted in an undue hardship. [Doc. 34 at 5–8]. Because I find that Safeway has met its burden to show that it offered a reasonable accommodation for Ms. Medina's religious practices, I decline to address whether Ms. Medina's requested accommodations would have resulted in an undue hardship. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("The employer need not further show that each of the employee's alternative accommodations would result in undue hardship.").

To accommodate means "allowing the plaintiff to engage in her religious practice despite the employer's normal rules to the contrary." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015); *see also Tabura*, 880 F.3d at 550. "But a reasonable accommodation does not necessarily spare an employee from any resulting cost." *Christmon v. B&B Airparts, Inc.*, 735 Fed. App'x. 510, 514 (10th Cir. 2018) (citing *Pinsker v. Joint Dist. No. 28J*, 735 F.2d 388, 390–91 (10th Cir. 1984)). "[A]ny reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Ansonia*, 479 U.S. at 68. Accordingly, an "accommodation may be reasonable even though it is not the one that the employee prefers." *Id.* (citation omitted).

In addition, the Supreme Court has suggested that "bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id.* at 69 (quotations omitted). However, the term "reasonable accommodation" does not lend itself to bright line rules; rather, "[e]ach case necessarily depends upon its own facts and circumstances, and in a sense every case boils down to a determination as to whether the employer has acted reasonably." *United States v. City of*

*Albuquerque*, 545 F.2d 110, 114 (10th Cir. 1976); *see also EEOC v. JBS USA, LLC*, 115 F. Supp. 3d 1203, 1228 (D. Colo. 2015).  Once an employer has provided a reasonable accommodation, it "need not further show that each of the employee's alternative accommodations would result in undue hardship." *Ansonia*, 479 U.S. at 68.

Here, Safeway argues that it satisfied its burden to show that it offered Ms. Medina reasonable accommodations.  *See* [Doc. 34 at 5–8].  Specifically, Safeway identifies three "reasonable accommodations" it claims to have offered to Ms. Medina:

> (1) having Ms. Medina work the self-checkout stand, where requesting donations was not required; (2) permitting Ms. Medina to not be required to use the words "holiday" "Santa bucks" "Turkey bucks" or any other holiday-themed language when asking for donations to the local food bank; (3) permitting Ms. Medina to take unpaid leave for the duration of the holiday season (an accommodation which she offered).

[*Id.* at 6–7].  As explained below, the court finds that Safeway has met its burden to show that there is no genuine dispute of material fact that it offered Ms. Medina a reasonable accommodation to work in self-checkout, which would have relieved her of her duty to solicit donations from customers during the holiday season.

*Self-Checkout.*  The court finds that the undisputed evidence shows the following:

- In 2018, after Ms. Medina requested an accommodation, Safeway offered Ms. Medina different positions (unidentified) throughout the store that she could do that did not require that she ask for donations at all, but Ms. Medina declined that offer.  [Doc. 34-2 at 42:7–15].

- In November 2018, Ms. Medina agreed in writing to Safeway's proposal that "[d]uring the holiday seasons of Thanksgiving and Christmas, Ms. Medina will take a personal leave of absence."  [Doc. 34-3 at 4]; *see also* [Doc. 34-3 at 3; Doc. 39 at 2].

- In December 2019, while she was on another leave of absence, Plaintiff informed Mr.

Martinez that she "want[ed] [her] job back immediately without asking for donations" plus "back pay for this year's missed wages and last year's as well." [Doc. 39-1 at 56:8–58:18; Doc. 34-3 at 5; Doc. 39 at 5]. In response, Mr. Martinez informed Plaintiff that she would be required "to ask for donations through the holidays [w]hile in the checkstand" or, in the alternative, she could return to work "sooner if [she] [would] agree to run the self checkouts during the holiday?" [Doc. 34-3 at 5; Doc. 34 at 3; Doc. 39 at 5]. The Parties do not indicate whether Ms. Medina accepted this offer to "run the self checkouts" but there is no dispute that such offer was made. *See* [Doc. 34 at 3; Doc. 39 at 5].

-   In October 2020, Safeway offered Ms. Medina the option to work self-checkout at the store from 3:30 p.m. to midnight, which would allow her to keep her regular work hours without asking for donations. [Doc. 34-3 at 6; Doc. 39-5 at 1]. Ms. Medina refused to sign the agreement memorializing this arrangement, however, because it did not specify that she would be guaranteed a "3:30 to midnight" shift, but instead stated that she "agree[d] to be assigned to Self-Checkout registers for her *entire shift* . . ." [Doc. 39-1 at 67:9–12; Doc. 39 at 6; Doc. 39-5 at 1 (emphasis added)].

-   Mr. Rickart advised Ms. Medina that Safeway "cannot guarantee that the shift will always be 3:30 to midnight and that some days the closing self checkout shift that [Safeway] ha[d] created to accommodate her situation might be 4 pm to midnight or 7 pm to midnight depending on the sales and needs of the store." [Doc. 39-9; Doc. 39 at 6]; *see also* [Doc. 39-3 at 52:6–17 (Mr. Rickart's testimony that the 3:30 to midnight self-checkout arrangement was "just not ideal" as "[s]elf-checkout normally closes at 10 p.m., because at that time of night, we don't have very many customers")].

- Thereafter, Safeway placed Ms. Medina on unpaid leave until after the 2020 holiday season.  [Doc. 4 at ¶ 31; Doc. 39 at 4].

Accordingly, there is no dispute that Ms. Medina was offered the option to work in self-checkout, where she would not be required to solicit donations from customers.  *See* [Doc. 39 at 3].[10]  And, at least in 2020, Ms. Medina declined that offer because it did not guarantee her a particular shift from 3:30 p.m. to midnight.  *See* [Doc. 39 at  6, 9 (citing to [Doc. 39-1 at 65:1–8])][11]; *see also* [*id.* at  12 ("Safeway claims it offered for the self-checkout stand to be open later than 10:00 p.m. so that Ms. Medina could work the entirety of her normal 3:00 p.m. – 12:00 a.m. shifts, however it specifically removed this from her accommodation agreement.")].

In the Motion, Safeway argues that "Ms. Medina's requested guaranteed schedule was in no way related to her religious beliefs . . . , rather it was simply because she liked that shift best." [Doc. 34 at 8].  Safeway also contends that it "offer[ed] to accommodate Ms. Medina by permitting her to work self-checkout during her requested time-frame as often as was practicable, [but] they merely could not guarantee any such set schedule given its potential to interfere with other employees' schedules and the fact that the needs of the business may require different shifts at different times based on sales."  [*Id.*].  Safeway further argues that it "attempted to reasonably

---

[10] Notably, neither Party specifically addresses when Safeway <u>first</u> offered Ms. Medina the option to work in self-checkout as a reasonable accommodation for her religious beliefs.  The record before the court confirms that Safeway offered this accommodation in 2019 and 2020.  *See* [Doc. 34-3 at 5–6; Doc. 39-5 at 1].  However, Ms. Medina does not contend that this proposed accommodation was unreasonable in any particular year.  Rather, in 2018, she contended that working in self-checkout was "punishment," *see* [Doc. 34-3 at 2], and then, in her Response, she claims that working in self-checkout "may have been reasonable if it would not result in a cut in pay," [Doc. 39 at 13].  In any event, there is no dispute that, in 2018, Safeway offered Ms. Medina unidentified "different positions" throughout the store that she could do that did not require that she ask for donations at all, but Ms. Medina declined that offer.  *See* [Doc. 34-2 at 42:7–15].

[11] These citations point to Ms. Medina's own deposition testimony that she is "sure" she stated that "she would be okay" working in self-checkout but "wanted to work until midnight" because she "didn't want [her] hours cut."  [Doc. 39-1 at 65:1–8].

17

accommodate Ms. Medina by permitting the self-checkout stand to be open later than 10:00 p.m. so that Ms. Medina could work the entirety of her normal 3:00 p.m. – 12:00 a.m. shifts" and Safeway was "under no obligation to accept Ms. Medina's sole terms for an accommodation." [*Id.*].

In her Response, Ms. Medina contends that "the suggested accommodation of working in self-checkout" would have resulted in her losing a "minimum of ten hours per week, or eighty hours each year for three years, because self-check closes two hours earlier than the regular check stand." [Doc. 39 at 9].   Ms. Medina also argues that by amending the proposal to work in self-checkout from "3:30-midnight" to "her entire shift," *see* [Doc. 39-5 at 1], Ms. Medina did not "turn[ ] down a reasonable accommodation" but, instead, Safeway "pulled [its] offer." [Doc. 39 at 12–13].   Thus, Ms. Medina contends, "[t]here are genuine issues of material fact as to what accommodations were offered." [*Id.*].   The court is not persuaded.

The gravamen of Ms. Medina's argument is that a proposal to work in self-checkout was not a reasonable accommodation because it would have resulted in a reduction in her hours and pay. *See, e.g.*, [Doc. 39 at 13 ("The accommodation of working self-check, or any other job for which she was qualified, may have been reasonable if it would not result in a cut in pay.")]. However, she cites no authority to support her position that a reasonable accommodation requires that the employee be spared *any* reduction in pay. *See* [*id.*].   Indeed, "a reasonable accommodation does not necessarily spare an employee from any resulting cost" and such accommodation "may be reasonable even though it is not the one that the employee prefers." *Christmon*, 735 Fed. App'x. at 514; *see also Ansonia*, 479 U.S. at 68 ("We find no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation.  By its very

terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation.").

In addition, Ms. Medina acknowledges she was a "part-time employee." [Doc. 39 at 6]. And while she asserts that she "consistently worked the same schedule," [*id.*], the store schedules she attaches as Exhibits and references in her Response do not support this assertion. *See, e.g.*, [Doc. 39-7 at 48–61].[12]

Furthermore, there also is no dispute that Ms. Medina's job title was classified as an all-purpose food clerk," which meant that she could be assigned to perform her work anywhere, including self-checkout. *See* [Doc. 40 at 2 (citing to [Doc. 34-1 at 67:13–25])]. In other words, by Ms. Medina's own admission, Safeway could assign her to work in self-checkout irrespective of her request for accommodation. However, Ms. Medina's Response makes clear that the only accommodations she would accept were either (1) working only in self-checkout strictly from 3:30 p.m. to midnight, where she would not be required to solicit "Turkey Bucks" or "Santa Bucks" from customers, *see* [Doc. 39 at 6, 9, 11–13], despite her acknowledgement that "self-checkout closes two hours earlier than the regular check stand[,]" [*id.* at 9]; or (2) continuing to work in the checkstand without requesting donations at all, *see* [*id.* at 12 ("Safeway was provided no evidence that Ms. Medina's request to continue working in the checkstand and not request donations would have been an undue hardship.")]. However, Ms. Medina was not permitted to continue to reject every accommodation option with which she disagreed. *See Ansonia*, 479 U.S. at 68 ("By its very

---

[12] For instance, in the week from March 29, 2020 to April 4, 2020, Ms. Medina was scheduled on Sunday and Monday from 3:10 p.m. to 9:00 p.m., and 2:30 p.m. to 9:00 p.m. on Thursday and Friday. [Doc. 39-7 at 48]. During the week from April 12 to April 18, 2020, Ms. Medina was scheduled from 2:00 p.m. to 9:00 p.m. on Monday, 4:15 p.m. to 9:00 p.m. on Thursday, 2:15 p.m. to 9:00 p.m. on Friday, and 2:00 p.m. to 9:00 p.m. on Saturday. [*Id.* at 50]. During the week from May 3 to May 9, 2020, Ms. Medina was scheduled to work from 2:30 p.m. to 11:00 p.m. on Tuesday, Thursday, and Friday; and from 4:15 to 11:00 p.m. on Saturday. [*Id.* at 53].

terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation."); *see also Lee v. ABF Freight System, Inc.*, 22 F.3d 1019, 1022 (10th Cir. 1994) ("The defendant's efforts to reach a reasonable accommodation triggered [employee's] duty to cooperate").

Accordingly, the court finds that Safeway has met its burden to show that there is no genuine dispute of material fact that it offered Ms. Medina a reasonable accommodation to work in self-checkout, which would have relieved her of her duty to solicit donations from customers during the holiday season. *See Ross v. Colo. Dep't of Transp.*, No. 11-cv-02603-REB-KMT, 2012 WL 5975086, at *9 (D. Colo. Nov. 14, 2012) (noting that the employer's "duty was to offer a reasonable accommodation, not necessarily the accommodation plaintiff would have preferred" and finding that the employer "clearly did so [t]here, reliving plaintiff of his duties to organize and advertise" an event that the plaintiff claimed was contrary to his religious beliefs).

***Taking Unpaid Leave.*** While the court need not decide whether the option to take unpaid leave was considered a reasonable accommodation, the court pauses for a moment here to consider Plaintiff's Response to the extent she claims that she was forced to take unpaid leave beginning in 2018 *before* Safeway proposed the reasonable accommodation of working in self-checkout. Specifically, the undisputed facts demonstrate that:

- On November 13, 2018, Ms. Medina agreed in writing that she would take an unpaid leave of absence during the holiday season. *See* [Doc. 34-3 at 3–4; Doc. 39 at 10–11].

- Ms. Medina took such leave during the 2018 holiday season and at least for the first part of the 2019 holiday season—that is, until December 2019 when she reached out to Mr. Martinez to state that that she "want[ed] [her] job back immediately without asking for

donations" plus "back pay for this year's missed wages and last year's as well." [Doc. 39-1 at 56:8–58:18; Doc. 34-3 at 5; Doc. 39 at 5].

- Mr. Martinez responded to Plaintiff's request: "Well unfortunately that's not the way it works according to the agreement that you signed. The only way you could go back is you would have to ask for donations through the holidays [w]hile in the checkstand or maybe we can get you back sooner if you agree to run the self checkouts during the holiday?" [Doc. 34-3 at 5 (emphasis added)].

However, Ms. Medina claims that she "felt as though she had no other choice but to sign the agreement" in 2018. [Doc. 39 at 5]. And, notably, neither of the Parties explicitly state when Safeway *first* proposed to Ms. Medina the option of working in self-checkout—i.e., whether this option was presented to Ms. Medina in 2018 *before* she took an unpaid leave of absence.[13]

---

[13] In the Motion, Safeway asserts under its "Statement of Undisputed Material Facts" that Ms. Medina had been offered the option of working self-checkout at the store given the fact that this position, given its multi-tasking obligations, did not require that she ask for donations, and she had declined the position then." [Doc. 34 at 3–4]. However, Safeway fails to provide any citation for this claim. *See* [*id.*]. Ms. Medina's Response provides no further clarification, as she states that "[t]here is no citation to the record for this fact. Plaintiff admits that she was told she could work self-check but that her hours would be cut and that it would be 'punishment.'" [Doc. 39 at 3 (citing to Plaintiff's "Disputed Material Facts 2 and 17")]. Complicating this matter further is Plaintiff's citation in her Response to "Disputed Material Facts 2 and 17." [*Id.*].

Plaintiff's Disputed Material Fact No. 2 states, "[a]fter her request in 2017, Ms. Medina was told she had to request donations as it was a part of job, at which point two of the store managers, Janis Hinojosa and Nicole Mayeda would stand at the end of her checkout line to make sure she was asking for donations." [*Id.* at 4]. However, those same assertions by Ms. Medina are consistent with the substance of an email from Mr. Martinez to Ms. Montgomery on January 12, 2018, [Doc. 34-3 at 2]—several months *before* the "Turkey Bucks" and "Santa Bucks" campaign even began, in the "fall of 2018." *See* [Doc. 4 at ¶ 10; Doc. 8 at ¶ 10]. In addition, Disputed Fact No. 17 states, "Ms. Medina did not sign [the agreement offering her the religious accommodation to work the self-checkout registers "for her entire shift"] due to it not having the shift she was promised, Safeway standing by the fact that the "computers make the schedule." [Doc. 39 at 6]; *see also* [Doc. 39-5 at 1]. However, that specific proposal was not discussed until October 2020. *See* [*id.*]

21

In any event, to the extent Ms. Medina claims that, in 2018, Safeway unilaterally decided that she should take an unpaid leave of absence to accommodate her religious practices *before* it offered her the option to work in the self-checkout register, that issue is not argued before this court. Moreover, even if it were, such a position is without merit. As mentioned above, Ms. Medina does not dispute that, in 2018, Safeway offered her other available positions throughout the store that she could do that did not require that she ask for donations at all, which Ms. Medina declined. *See* [Doc. 34-2 at 42:7–15].[14]

In sum, I conclude that Safeway has met its burden to show that it offered Ms. Medina the reasonable accommodation of working in self-checkout. Accordingly, Safeway is entitled to summary judgment as to Ms. Medina's failure to accommodate theory of religious discrimination.[15]

### ORDER TO SHOW CAUSE

As discussed above, Safeway does not explicitly address Ms. Medina's claims for retaliation in its Motion for Summary Judgment. *See supra.* Instead, Safeway (and perhaps, Ms.

---

[14] And based on the record before the court, in January 2018—several months *before* the "Turkey Bucks" and "Santa Bucks" campaign began, *see* [Doc. 4 at ¶ 10 (stating the campaign began "[i]n [f]all 2018"); Doc. 8 at ¶ 10]—Ms. Medina had already objected to working in self-checkout, not because of any potential reduction in hours and pay, but because *she* deemed such work as "punishment." *See* [Doc. 39 at 4]; *see also* [Doc. 34-3 at 2]; [Doc. 39-3 at 35:19–36:19 (the deposition excerpts cited by Plaintiff in her Response, reflecting that Plaintiff claimed she was being "punished" by Ms. Mayeda "for not participating," but does not reference a particular religious accommodation request); Doc. 39-3 at 86:17–87:10 (Mr. Rickart's testimony that he did not know what Plaintiff was referring to when she claimed that Ms. Mayeda was punishing Plaintiff by assigning her to work the self-checkout lane).

[15] In her Response, Ms. Medina also argues that she "had the adverse action of constructive layoff for eight weeks of each year." [Doc. 39 at 9–10]. However, Ms. Medina provides no further argument or legal authority regarding this assertion, nor does she allege a theory of "a constructive layoff" in the Complaint. Accordingly, even assuming that such a cause of action is cognizable under the law of the Tenth Circuit for a temporary period of time, this court will not entertain it here.

Medina) appear to construe the retaliation claim as identical to the failure to accommodate claim. *See, e.g.*, [Doc. 50 at 3 (describing Ms. Medina's claim as one where "Safeway discriminated against her <u>and retaliated by failing to provide her a reasonable accommodation</u> with respect to her religious beliefs" (emphasis added)); Doc. 4 at ¶¶ 33–40]. Indeed, it is unclear to this court whether there is a theory of retaliation distinct from the failure to accommodate claim. *See generally* [Doc. 4; Doc. 50].

Rule 56(f)(3) permits a court, after giving notice and a reasonable time to respond, to consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. Fed. R. Civ. P. 56(f)(3). Given the court's determination of undisputed material facts reflected above, *see supra*, this court **ORDERS** Plaintiff to **SHOW CAUSE** as to why summary judgment should not be granted in favor of Safeway on her retaliation claims under Title VII and CADA no later than **March 11, 2022**. In addition, Ms. Medina should **SHOW CAUSE** as to why the portion of her Motions in Limine [Doc. 52] pertaining to evidence regarding the reasonableness of Safeway's accommodation is not moot in light of this Memorandum Opinion and Order. Safeway may then file any response no later than **March 18, 2022**.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)    Defendant's Motion for Summary Judgment [Doc. 34] is **GRANTED**;

(2)    Summary Judgment shall be **ENTERED** in favor of Defendant Safeway Inc. and against Plaintiff Brenda Medina as to Plaintiff's failure to accommodate theory of religious discrimination under Title VII of the Civil Rights Act of 1964 and the Colorado Anti-Discrimination Act;

(3)   Plaintiff shall **SHOW CAUSE** as to why summary judgment should not be granted in favor of Defendant Safeway Inc. and against Plaintiff Brenda Medina on Plaintiff's retaliation claims under Title VII of the Civil Rights Act of 1964 and the Colorado Anti-Discrimination Act, and why the portion of her Motion in Limine [Doc. 50] directed at the reasonableness of Safeway's accommodation is not moot, no later than **March 11, 2022**;

(4)   To the extent that Plaintiff responds to the Order to Show Cause with an argument that her claims for retaliation should proceed to trial, Defendant shall FILE any response no later than **March 18, 2022**; and

(5)   The four-day jury trial to begin on April 11, 2022 **REMAINS SET**.

DATED:  March 7, 2022                              BY THE COURT:

                                                   _____
                                                   Nina Y. Wang
                                                   United States Magistrate Judge