# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03726-NYW

BRENDA MEDINA,

    Plaintiff,

v.

SAFEWAY INC., a foreign corporation,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This matter comes before the court on the following:

1. The court's Memorandum Opinion and Order to Show Cause ("Order") dated March 7, 2022, [Doc. 53];

2. Plaintiff Brenda Medina's ("Ms. Medina" or "Plaintiff") Response to Order to Show Cause ("Response"), [Doc. 54, filed March 12, 2022]; and

3. Defendant Safeway Inc.'s ("Safeway" or "Defendant") Reply to Plaintiff's Response to Order to Show Cause ("Reply"), [Doc. 55, filed March 18, 2022].

The court considers this matter pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated February 8, 2021 [Doc. 13]. *See also* [Doc. 12]. This court concludes that oral argument will not materially assist in the resolution of these matters. Accordingly, having reviewed Plaintiff's Response, Defendant's Reply, and the applicable case law, and being sufficiently advised in the premises, the court **GRANTS** summary judgment as to Plaintiff's retaliation claims in favor of Defendant and against Plaintiff.

BACKGROUND

The court has discussed the background of this matter in its prior Memorandum Opinion and Order, *see* [Doc. 54], and therefore limits its discussion here to only the most salient, undisputed facts. This civil action arises out of Ms. Medina's employment with Safeway and her request for an accommodation for her religion. Ms. Medina has been an employee of Safeway for over 24 years. [Doc. 34-1 at 7:13–21; Doc. 39 at 1]. Under her Union Contract, Ms. Medina's job is classified as an "all-purpose food clerk," which meant that she could perform her work duties "pretty much anywhere in the store" and that management had the discretion to assign her to work wherever it decided, including self-checkout. [Doc. 34-1 at 67:13–25]. As a practicing Jehovah's Witness, Ms. Medina does not celebrate holidays. [Doc. 1 at ¶ 8].

In the fall of 2018, when Safeway began a campaign to solicit donations from customers at the check stands for "Turkey Bucks" and "Santa Bucks" as part of the holiday season, [Doc. 4 at ¶ 10; Doc. 8 at ¶ 10]. At some point in the campaign, Ms. Medina requested to be exempted from asking customers to donate to the campaign, citing to her religious beliefs. In response, Safeway offered Ms. Medina an option to not say "Turkey" or "Santa Bucks" but, instead, "Would you like to donate to the Larimer County Food Bank?" [Doc. 34-2 at 41:23–42:6]. When Ms. Medina declined that suggestion, Safeway offered her different positions throughout the store that she could do that did not require that she ask for donations at all; however, Ms. Medina declined that offer as well. [*Id.* at 42:7–15]. On November 23, 2018, Ms. Medina ultimately agreed, in writing, to Safeway's proposal that "[d]uring the holiday seasons of Thanksgiving and Christmas, Ms. Medina will take a personal leave of absence." [Doc. 34-3 at 4]; *see also* [Doc. 34-3 at 2; Doc. 39 at 2].

The following holiday season, beginning October 24, 2019, Ms. Medina took another

2

personal leave of absence based on her assumption that the agreement she signed in 2018 constituted a continuous arrangement with Safeway. *See* [Doc. 34-1 at 51:17–55:13; Doc. 34-3 at 7; Doc. 39 at 2].[1] However, in December 2019, Plaintiff reached out to her union representative, Jay Martinez ("Mr. Martinez"), to request that she be allowed to return to work—in particular, that she "want[ed] [her] job back immediately without asking for donations" plus "back pay for this year's missed wages and last year's as well." [Doc. 39-1 at 56:8–58:18; Doc. 34-3 at 5; Doc. 39 at 5].[2] Mr. Martinez advised Plaintiff that her request was contrary to the accommodation agreement she signed with Safeway, but also informed her that she could return to work sooner if she either (a) requested donations or (b) agreed to work in self-checkout during the holiday. [Doc. 34-3 at 5; Doc. 34 at 3; Doc. 39 at 5].

In October 2020, Safeway again offered Ms. Medina the option to work in self-checkout at the store from 3:30 p.m. to midnight, which would allow her to keep her regular work hours without asking for donations. [Doc. 34-3 at 6; Doc. 39-5 at 1; Doc. 39-2 at 41:1–21; Doc. 39-3 at 52:6–17]. Ms. Medina ultimately did not sign the agreement regarding this arrangement, however, because it stated that she would be "assigned to the Self-Checkout registers *for her entire shift*," [Doc. 39-5 at 1 (emphasis added)], but did not specify that she would be guaranteed a "3:30 to midnight" shift. [Doc. 39 at 6; Doc. 39-1 at 67:9–12; Doc. 39-9]. Thereafter, Safeway placed Ms. Medina on unpaid leave until after the 2019 holiday season. [Doc. 4 at ¶ 31; Doc. 39 at 4].

---

[1] Ms. Medina's Response appears to contest the fact that she "assumed" she had a continuous agreement to take unpaid leave, *see* [Doc. 39 at 2]; however, Ms. Medina testified that she notified Ms. Hinojosa that she intended to take a leave of absence in 2019 because "[o]n that paperwork [she] signed, [she] assumed it was every year." [Doc. 34-1 at 53:16–19].

[2] While Safeway claims that Ms. Medina made this request "[i]n late 2020," [Doc. 34 at 3], the record reflects that this occurred in December 2019.

On December 1, 2020, Ms. Medina filed her Complaint, [Doc. 4], asserting claims of (1) religious discrimination based on a failure-to-accommodate theory of liability (or "failure to accommodate claim") and (2) retaliation, both under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. and Colorado's Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-401, *et seq*. [*Id.* at ¶¶ 33–39]. On October 8, 2021, Safeway filed a Motion for Summary Judgment (or "Motion), arguing that it is entitled to judgment as a matter of law on Plaintiff's failure to accommodate claim. [Doc. 34]. After full briefing on the merits, this court granted Safeway's Motion for Summary Judgment, concluding, *inter alia*, that Safeway "met its burden to show that it offered Ms. Medina the reasonable accommodation of working in self-checkout." [Doc. 53 at 22]. Because the Motion did not address Plaintiff's retaliation claim(s), the court noted that "Safeway (and perhaps, Ms. Medina) appear to construe the retaliation claim as identical to the failure to accommodate claim" and "it is unclear to this court whether there is a theory of retaliation distinct from the failure to accommodate claim." [*Id.* at 22–23]. Therefore, the court ordered Plaintiff to show cause in writing why summary judgment should not be granted in favor of Safeway on Plaintiff's retaliations claims pursuant to Federal Rule of Civil Procedure 56(f)(3), and why the portion of Plaintiff's Motion in Limine, [Doc. 52], directed at the reasonableness of Safeway's accommodation, was not moot. [Doc. 53 at 23–24].

Ms. Medina filed her Response on March 12, 2022, arguing that summary judgment as to her retaliation claims is improper because she "can establish a plausible prima facie claim of retaliation" and there are genuine issues of material fact as to those claims. *See* [Doc. 54 at 1–6]. With leave of court, Safeway replied on March 18, 2022. *See* [Doc. 55]. Thus, this matter is ripe for determination, and I consider the Parties' arguments below.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56(f)(3) permits a district court, after giving notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." *See also A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016) ("The court may grant summary judgment sua sponte so long as the losing party was on notice that it had to come forward with all of its evidence." (brackets and quotations omitted)). "The emphasis on 'notice' and an 'opportunity to respond' ensures that a party can present evidence showing a genuine issue of material fact to defeat summary judgment." *Jones v. State Farm Mut. Automobile Ins. Co.*, 653 Fed. App'x 598, 608 (10th Cir. 2016) (quoting *Johnson v. Weld Cty.*, 594 F.3d 1202, 1214 (10th Cir. 2010)).

Under Rule 56, summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy her burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on

"mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment). In considering the nonmovant's evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).

## ANALYSIS

To prevail on a claim for retaliation under Title VII or the CADA without direct evidence, Ms. Medina must show (1) she engaged in protected opposition to discrimination; (2) she suffered what a reasonable employee would have found to be a materially adverse action by the employer; and (3) a causal connection existed between the protected opposition and the materially adverse action. *See Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (explaining that Title VII claims follow the *McDonnell Douglas* burden-shifting framework). If Ms. Medina can establish a prima facie case, "the burden shifts to the defendant (i.e., employer) to come forward with a legitimate, non-retaliatory rationale for the adverse employment action." *Id.* If the employer meets its burden, then the plaintiff "must show that the [employer's] proffered rationale is pretextual." *Id.* (internal quotation marks and citations omitted); *see also Agassounon v. Jeppesen Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) ("CADA discrimination and retaliation claims are subject to the same legal standards as Title VII claims.") (first citing *Johnson v. Weld County*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010), and then *Colo. Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 400 (Colo. 1997)).

"Protected activity includes opposition to a discriminatory practice, as well as request for, or complaint at the denial of, a religious accommodation." *EEOC v. JBS USA, LLC*, 339 F. Supp. 3d 1135, 1193 (D. Colo. 2018) (first citing *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000), and then *Lewis v. N.Y. City Transit Auth.*, 12 F.Supp.3d 418, 449 (E.D.N.Y. 2014)

6

(accommodation request and complaints are protected activity)). In other words, even if an underlying violation of Title VII or CADA is not found, a plaintiff can maintain a retaliation claim so long as she possessed at least a "mistaken good faith belief" that the antidiscrimination laws had been violated. *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 n.4 (10th Cir. 2000) (citing *Robbins v. Jefferson Cty. Sch. Dist. R-1*, 186 F.3d 1253, 1258 (10th Cir. 1999); *JBS USA*, 339 Fed. Supp. 3d at 1193.

I. **Theory of Retaliation**

As the court noted in its Memorandum Opinion and Order, it is "unclear . . . whether there is a theory of retaliation distinct from [Plaintiff's] failure to accommodate claim." [Doc. 53 at 23]. Ms. Medina's Response to the Order to Show Cause likewise fails to distinguish materially between her claims. Instead, it appears that Ms. Medina's retaliation theory is, and consistently has been, that Safeway retaliated against her by placing her on unpaid leave for making complaints about having to offer Safeway customers "Turkey Bucks" or "Santa Bucks"—the same act that Ms. Medina contends amounts to a failure to accommodate. *See* [Doc. 4 at ¶¶ 6–37; Doc. 50 at 2–3; Doc. 54 at 5 ("When Plaintiff reported her concerns about such discrimination to her union representative, she began to experience harassment, hostility, and threats of punishment, and ultimately approximately eight weeks each year of unpaid leave, by her employer.")].

In her Response, Ms. Medina contends that genuine issues of material fact exist that would make summary judgment on her retaliation claims improper. [Doc. 54 at 1]. She presents thirteen purported "Undisputed Material Facts" which parallel the purported "Disputed Material Facts" in her Response to the Motion for Summary Judgment. *Compare* [Doc. 39 at 4–5, ¶¶ 2–8] *with* [Doc. 54 at 1–3, ¶¶ 7–13].[3] Notwithstanding her references to purported "Undisputed Material Facts"—

---

[3] For instance, Ms. Medina claims it is undisputed that (a) "[a]fter the grievance in 2017, Ms. Medina was told she had to request donations as it was a part of her job, at which point two of the

7

which, as explained below, the court does not find to be material or supported by the record—Ms. Medina makes no reference to those assertions in support of her position that summary judgment is not warranted on her retaliation claims. Instead, her Response insists that the "[C]omplaint contains factual allegations which are sufficient to establish a plausible prima facie claim of retaliation," [Doc. 54 at 4], and then references various allegations in the Complaint to support her claims and the record that she engaged in protected activity. *See* [*id.* at 4–5].

## II.  Prima Facie Case

The court first considers whether Plaintiff has carried her burden to establish a prima facie case of retaliation. As an initial matter, to the extent that Ms. Medina believes that her retaliation claim can survive summary judgment so long as she has sufficiently pled the elements of her prima facie retaliation claims in the unverified Complaint, *see* [*id.* at 5–6 ("Because the Plaintiff can establish a plausible prima facie claim of retaliation, and there exist genuine issues of material fact, summary judgement [sic] is not proper under F.R.C.P. 56.")], this court respectfully disagrees.[4] Instead, it is axiomatic that at summary judgment, a party "may not rest on mere allegations or

---

store managers, Janis Hinojosa and Nicole Mayeda would stand at the end of her checkout line to make sure she was asking for donations"; (b) if she "did not ask for donations, she would get called into the office and told she would be put on self-checkout as punishment"; and (c) she "felt as though she had no other choice but to sign the agreement" to take unpaid leave as an accommodation. [Doc. 54 at 2–3, ¶¶ 7–18, 13]. These assertions are substantially similar to assertions that Ms. Medina makes in her Response to Defendant's Motion for Summary Judgment. *See* [Doc. 39 at 4–5, ¶¶ 2–3, 8].

[4] In its Reply, Safeway echoes the court's findings in the Memorandum Opinion and Order, arguing that the harm Plaintiff alleges in support of her retaliation claims is the same as the harm alleged with respect to Plaintiff's failure to accommodate claim. *See* [Doc. 55 at 1–2 ("Plaintiff's First and Second Claims for Relief under Title VII and CADA allege both religious discrimination and retaliation without any separation or distinction.")]. Thus, Safeway contends that given the court's conclusion that Safeway offered Ms. Medina a reasonable accommodation, summary judgment also "is appropriate on her retaliation claims for the same reasons . . ." [*Id.* at 2]. Safeway also points out that Ms. Medina fails to differentiate "between her failure to accommodate claims and her retaliation claims with respect to the relief she sought in her initial Complaint" and that "she cites to no disputed facts that help that analysis." [*Id.*].

denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In any event, as explained below, Ms. Medina fails to adduce sufficient evidence that she experienced a materially adverse employment action, *see* [Doc. 54], and thus fails to carry her burden of establishing a prima facie case of retaliation.

**2017.** There is no dispute that in late 2017, Ms. Medina complained to Safeway about religious discrimination. [Doc. 34 at 2; Doc. 34-1 at 39:7–10]. Ms. Medina fails, however, to identify any materially adverse employment action that she experienced because of those complaints (or at all). *See* [Doc. 54 at 4].

**2018.** Ms. Medina argues that "[i]n the fall of 2018, when the holiday donations campaign began, Plaintiff requested that her supervisor allow her to be exempted from asking customers to donate to the campaign," and her "supervisor denied her request and began to harass her 'by hovering at her check stand to see if she would ask customers to donate.'" [Doc. 54 at 4–5]. Similarly, Ms. Medina insists that "[w]hen [she] reported her concerns about such discrimination to her union representative, she began to experience harassment, hostility, and threats of punishment, and ultimately approximately eight weeks each year of unpaid leave, by her employer." [*Id.* at 5]. However, as explained in the court's Order, it is undisputed that when Ms. Medina requested a religious accommodation from soliciting holiday-themed donations in 2018, Safeway offered Ms. Medina an option to not say "Turkey" or "Santa Bucks" but, instead, "Would you like to donate to the Larimer County Food Bank?" [Doc. 34-2 at 41:23–42:6]. When Ms. Medina declined that offer, Safeway then offered her different positions throughout the store that she could do that did not require that she ask for donations at all; however, Ms. Medina declined that offer as well. [*Id.* at 42:7–15]; *see also* [Doc. 53 at 7–8, ¶¶ 6–8]. Indeed, based on the record

9

before the court, there is no dispute that when Ms. Medina requested a religion-based exemption from the holiday donations campaign in 2018, Safeway offered her the *option* to take unpaid leave to accommodate her religious beliefs only *after* she rejected Safeway's other accommodation proposals. *See* [Doc. 53 at 22].[5]

In addition, Ms. Medina's repeated assertion that she "felt as though she had no other choice but to sign the agreement" regarding the unpaid leave, *see* [Doc. 39 at 5, ¶ 8; Doc. 54 at 3, ¶ 13], ignores that Ms. Medina does not dispute Safeway had first offered other accommodations that Ms. Medina refused. Ms. Medina was not permitted to continue rejecting reasonable accommodations that would have allowed her to continue working in favor of the last option available—an eight-week, unpaid leave of absence—only to now argue that she was forced to take such unpaid leave in retaliation for engaging in protected activity. *Cf. EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015) ("If [an employer] is willing to 'accommodate' . . . [then an] adverse action 'because of' the religious practice is not shown."); *EEOC. v. Jetstream Ground Services, Inc.*, No. 13-cv-02340-CMA-KMT, 2016 WL 879625, at *4 (D. Colo. Mar. 8, 2016) (rejecting that plaintiff's argument that "where the employer is **not** willing to accommodate, an adverse action is shown" (emphasis in original)).

---

[5] Plaintiff also provides no support in the record for her assertions that she experienced "harassment, hostility, and threats of punishment" after she purportedly complained in 2018. *See* [Doc. 54 at 5]; *see also* [Doc. 53 at 3 n.1]. Moreover, as explained by the Tenth Circuit,

> this court has acknowledged on numerous occasions that the anti-discrimination laws do not license courts to police the workplace for each and every deviation from social standards of proper interpersonal conduct. In the context of alleged retaliation, we have repeatedly held that, unless pervasive, incidents of rudeness, ridicule, unruly behavior, and angry outbursts allegedly prompted by past complaints are not sufficient to satisfy the material-adversity standard.

*Samuels v. Potter*, 372 Fed. App'x 906, 908 (10th Cir. 2010) (citing *Somoza v. Univ. of Denver,* 513 F.3d 1206, 1214–15 (10th Cir. 2008) (discussing several of this circuit's cases)). Here, there is not sufficient evidence to establish a triable issue on pervasiveness.

**2019.** Assuming, without deciding, that Ms. Medina's request to be allowed to return to work in December 2019 constitutes a protected activity to establish the first element of her prima facie retaliation claim, *see JBS USA, LLC*, 339 F. Supp. 3d at 1193 ("[R]equesting a reasonable religious accommodation is protected activity . . . that may support a retaliation claim."), Ms. Medina again fails to adduce sufficient evidence that she experienced a materially adverse employment action. Indeed, she does not allege that Safeway denied her request. Instead, *Ms. Medina* admits that in 2019, "she proceeded in the same fashion the following year," [Doc. 39 at 2, ¶ 12], and that *Mr. Martinez,* her union representative, *rather than any supervisor at Safeway*, told her that she could not return without asking for donations or if she agreed to run the self-checkouts during the holiday, *see* [*id.* at 5, ¶ 10; Doc. 34-3 at 5].

**2020.** Likewise, in October 2020, it is undisputed that Safeway offered Ms. Medina to opportunity to work at the self-checkouts. *See* [Doc. 39 at 6, ¶ 13; Doc. 39-5 at 1]. But Ms. Medina refused when the agreement did not guarantee that she would always be given the 3:30 to midnight shift. *See* [Doc. 39 at 6, ¶¶ 13–18; Doc. 39-1 at 67:9–12; Doc. 39-9]. Under Tenth Circuit law, "[c]onduct rises to the level of 'adverse employment action' when it 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (quoting *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Under the Union Contract, Ms. Medina's job is classified as an "all-purpose food clerk," which meant that she could perform her work duties "pretty much anywhere in the store" and that management had the discretion to assign her to work wherever it decided, including self-checkout. [Doc. 34-1 at 67:13–25]. Here, there is no competent evidence in the record that Ms. Medina was *guaranteed* any particular shift by Safeway or that working the

11

self-checkout through the holiday period would *necessarily* have resulted in a cut in pay. *See* [Doc. 39; Doc. 54].

Indeed, the evidence she offers to support the proposition that she "consistently worked the same schedule[,]" [Doc. 39 at 7, ¶ 21 (citing [Doc. 39-7 at Safeway BATES 68–81, 580–835])], indicates that while she may have worked consistent shifts, she did not work identical shifts. *See, e.g.*, [Doc. 39-7 at 1–3 (Safeway 00583, 00588, 00592)]. She concedes that she was a part-time employee. [Doc. 39 at 7, ¶ 21]. Nor is there any evidence (or suggestion) that her assignment to self-checkout was permanent in nature. She continues to work at Safeway today. [Doc. 39 at 1, ¶ 2]. The Tenth Circuit has repeatedly observed that the standard for material adversity "is sensitive to the particular circumstances of each case[.]" *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009). "[A] mere inconvenience or an alteration of job responsibilities[ ] is not an adverse employment action." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004) (citation and internal quotations omitted). Based on the record before it, this court concludes that Ms. Medina has failed to adduce sufficient evidence to establish a triable issue that she has been subjected to an adverse employment action. *Cf. Samuels v. Potter*, 372 Fed. App'x 906, 907 (10th Cir. 2010) *aff'g Samuels v. Potter*, No. 08-cv-00360-LTB-MEH, 2009 WL 735706, at *1 (D. Colo. Mar. 18, 2009) (holding that there was no triable issue of adverse employment action for one day of absence without leave); *Seely v. Runyon*, 1998 WL 863974 (10th Cir. Dec. 14, 1998), *aff'g* 966 F. Supp. 1060 (D. Utah 1997) (holding that a 90-day temporary assignment was not an adverse employment action); *Mashburn v. Albuquerque Police Dep't,* Civ. No. 03-747 JH/RLP, 2005 WL 8164409, at *3 (D.N.M. Jan. 21, 2005).

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Summary Judgment shall be **ENTERED** in favor of Defendant Safeway Inc. and against Plaintiff Brenda Medina as to Plaintiff's retaliation claims under Title VII of the Civil Rights Act of 1964 and the Colorado Anti-Discrimination Act;

(2) Plaintiff's discrimination and retaliation claims are **DISMISSED with prejudice**;

(3) Plaintiff's Motion in Limine [Doc. 52] is **DENIED as moot**;

(4) The four-day jury trial set to begin on April 11, 2022, and all associated deadlines set by the Trial Preparation Order [Doc. 51], are **VACATED**;

(5) Final Judgment shall **ENTER** in favor of Safeway and against Ms. Medina;

(6) Safeway is **AWARDED** its costs pursuant to Federal Rule of Civil Procedure 54(d); and

(7) The Clerk of the Court shall terminate this civil action pursuant to the entry of Final Judgment.

DATED: March 25, 2022

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge